### THE COLUMBIA.[1]

*(District Court, D. Massachusetts. April 10, 1886.)*

COLLISION—PILOT-BOAT BECALMED—STEAMER APPROACHING FROM ASTERN—FAILURE TO SEASONABLY SHOW LIGHTED TORCH—NEGLECT TO STOP AND REVERSE—HALF DAMAGES.

The pilot-boat S. was run into by the steamer C. The latter's speed, at the time of the collision, was eight knots; the former was becalmed. The line of approach of the steamer was from astern, thereby shutting out the side lights of the pilot-boat. The pilot-boat was seen "right ahead" when the steamer was three or four lengths off. The steamer's helm was ordered "hard a-port," but no change was made in her speed. *Held*, that as the evidence shows that the steamer could have been stopped in going twice her length, the order "hard a-port" was not sufficient; she should have been stopped, and her engines reversed. *Held*, that the flare-up light of the pilot-boat, if shown at all, was not shown seasonably. To exempt herself from fault, a lighted torch should have been seasonably exhibited over her stern.

*C. T. Bonney*, for libelant.

*George Putnam*, for claimant.

NELSON, J. This case was a libel for collision by the owner of the pilot-boat Sprite, of Boston, against the English steam-ship Columbia. The collision occurred in Massachusetts bay, 10 miles east of Boston light, at 15 minutes after 12 o'clock, on the morning of July 4, 1881. The Sprite was returning to Boston from a cruise for vessels in the bay. She had her side lights set and burning, and was lying becalmed on the port tack, her mainsail, foresail, and jib set, heading nearly due west, with one man on deck as lookout and keeper. Her master was below in the cabin, and the rest of the men were asleep. The night was fine and clear; lights could be seen at a great distance. The Columbia was on a voyage from Liverpool to Boston, and had taken a pilot. She was running at a speed of eight

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

knots, and was steering a course due west for Boston light. The pilot and second officer were on the bridge. A lookout was stationed forward. Her master was also on deck. As the steamer was coming up directly astern of the pilot-boat, the side lights of the latter were of course invisible to those in charge of the steamer. The port bow of the steamer struck the pilot-boat's main boom, and carried away her mainmast and main-boom, and split her mainsail and foresail.

To exempt herself from responsibility, it is necessary for the pilot-boat to prove that she seasonably exhibited a lighted torch over her stern. Her lookout states that he first saw the lights of the steamer three or four miles off, and showed a flare-up light. He then went below and called the master. The master came on deck, looked at the steamer, and went below again. The lookout called him a second time. Both agree that no flare-up was shown after the first one, until the master came on deck the second time. I am not convinced that the lookout's statement as to the first flare-up is true. It was not seen on the steamer. The sailing master of a yacht in the vicinity, who was watching the pilot-boat and steamer, saw the second flash, but did not see the first one. This man was called as a witness by the pilot-boat. There was also evidence that the master of the pilot-boat complained of the conduct of the lookout. Nor do I think it is sufficiently proved that a second flare-up was shown until the pilot-boat was so close under the bows of the steamer that the light could not be seen from the deck and bridge of the latter. The statements of the master and lookout, and the other evidence in the case, are not sufficient, in my judgment, to overcome the strong presumption that, in the clear atmosphere, a flare-up light on the pilot-boat would not have escaped the observation of the pilot, second officer, and lookout on the steamer, who were all looking ahead for lights. It is certain they saw no flash-light before the collision. A man on the steamer, not in the watch on deck, called by the libelant, says he saw a flash-light on the pilot-boat when a ship's length off. He was not in as good a position to see ahead as those engaged in the management of the ship, and I doubt his story.

As to what occurred on board of the steamer, the evidence, taken in its most favorable light for her, shows this: The lookout reported "a vessel right ahead." The second officer, who was in charge, says that on the report of the lookout he looked and saw nothing. He then took his glasses, and looked, and saw a dark object ahead, and he then gave the order hard aport. The lookout states that the pilot-boat, when first reported, was three or four lengths off. It also appears from his testimony, as well as from that of the pilot, that the ship was stopped, after the collision, in going twice her length. The report of the lookout of "a vessel right ahead" was a clear indication that a collision was imminent. The order "hard aport" was therefore not sufficient under the circumstances. The order should have been to stop and reverse. Upon the steamer's own evidence, this

would have prevented the accident. This was required by the sailing rules of both nations, and was the plain duty of the steamer.

Having held the pilot-boat at fault upon another ground, I have not found it necessary to consider the defense made by the steamer that the pilot-boat was sailing with side lights, and not under a mast-head pilot light.

Both vessels being at fault, a decree is to be entered for the libelant for one-half the damages. Ordered accordingly.